


**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed June 12, 2008** **United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SAMUEL CHIP STEELE, | § | Case No. 08-40282-DML-13 |
| | § | |
| Debtor. | § | |

**MEMORANDUM OPINION**

Before the court is the Amended Objection to Confirmation of Plan (the "Objection") filed by Wells Fargo Bank, N.A., Wells Fargo Auto Finance ("Wells Fargo"), by which Wells Fargo objects to confirmation of Debtor's Amended Chapter 13 Plan (the "Plan"). The court held a confirmation hearing on the Plan on April 17, 2008, and heard argument from the parties at that time. Thereafter, at the court's invitation, Wells Fargo and Debtor each filed a brief in support of that party's position.

This matter is subject to the court's core jurisdiction. *See* 28 U.S.C. §§ 1334 and 157(b)(2)(L) and (O). This memorandum opinion embodies the court's findings of fact and conclusions of law. *See* Fed. R. Bankr. P. 9014 and 7052.

## I. Background

The parties have no dispute concerning the facts relevant to the court's determination of the Objection. On June 29, 2007, Debtor purchased a 2007 Pontiac Grand Prix automobile (the "Vehicle"). The purchase of the Vehicle was financed through Wells Fargo.

The cash price for the Vehicle was $20,800. However, the amount financed, $35,368.93, included a number of additional items, the most significant of which was $11,775.52, representing the difference between the value of two automobiles which Debtor traded in for the Vehicle and the remaining debt against them.[1] On January 30, 2008, Debtor filed for relief under chapter 13 of the Bankruptcy Code (the "Code"). As of that date, Wells Fargo was owed $34,688.68 for the loan secured by the Vehicle, and, on April 16, it filed its claim (the "Claim") in that amount. In the Plan, Debtor provided for Wells Fargo's secured claim in the amount of $20,800, representing just the Vehicle's cash purchase price. Wells Fargo then filed the Objection, asserting that its treatment under the Plan does not comport with section 1325(a) of the Bankruptcy Code (the "Code")[2], specifically the unnumbered paragraph at the end of section 1325(a), which modifies section 1325(a)(5) (the "Unnumbered Paragraph").

## II. Issue

The issue before the court is, to what extent, if at all, is Wells Fargo entitled to have the Claim treated in accordance with the Unnumbered Paragraph.

---

[1] The other items financed were sales tax ($581.25), license and registration fees ($103.80), insurance ($719.40), inventory tax ($44.78), documentary fee ($50.00), and extended warranty ($1,294.18).

[2] 11 U.S.C. §§ 101 et seq.

## III. Discussion

The Unnumbered Paragraph, which was added to Code § 1325(a) in 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), states:

> For purposes of paragraph (5) [of section 1325(a)], section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

Section 1325(a)(5) of the Code specifies what treatment may be provided for secured claims in a chapter 13 plan. Two acceptable treatments – surrender of the collateral underlying the claim and treatment accepted by the creditor – are not affected by the Unnumbered Paragraph. Section 1325(a)(5)(B), however, allows a plan to provide for payment of a secured claim through periodic payments including interest at a rate providing to the creditor the present value of the secured claim. This provision – the cramdown provision – when read with section 506(a)(1) of the Code[3] ordinarily allows a debtor to retain property that secures a creditor's claim by payment to the creditor over time of the present value of the lesser of the claim or the collateral's value.[4] *See* 8 Collier on Bankruptcy ¶ 1325.06[3] (15th ed. rev. 2007). The Unnumbered Paragraph, by

---

[3] Section 506(a)(1) defines a secured claim as follows:

> An allowed claim of a creditor secured by a lien on property . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

[4] Section 506(a)(2) (added by BAPCPA) provides that, in an individual's case under chapter 7 or 13, value of collateral will be determined on a replacement cost basis.

removing section 506 from the operation of section 1325(a)(5), limits cramdown treatment to that which provides a creditor, to the extent qualifying for treatment under Unnumbered Paragraph, with the present value of the creditor's claim, regardless of the value of the collateral.

The Unnumbered Paragraph was added to the Code by BAPCPA to address the situation where a prospective debtor, on the eve of bankruptcy, purchases a vehicle and then, following a chapter 13 filing, uses section 506 to strip the debt down to the value of the vehicle. *See* H.R. Rep. No. 109-31, pt. 1, at 103 (2005); *In re Payne*, 347 B.R. 278, 280 (Bankr. S.D. Ohio 2006); *In re Scruggs*, 342 B.R. 571, 573-74 (Bankr. E.D. Ark. 2006); *In re Stevens*, 368 B.R. 5, 8 (Bankr. D. Neb. 2007); *In re Bray*, 365 B.R. 850, 854 (Bankr. W.D. Tenn. 2007). The Unnumbered Paragraph establishes three requirements that must be met for the claim to be subject to the treatment it provides. Only one of these, whether the claim is based on a debt for which "the creditor has a purchase money security interest," is at issue in the case at bar.[5]

Two courts in the Fifth Circuit have addressed the nature of the purchase-money security interest ("PMSI") requirement of the Unnumbered Paragraph in a context similar to that presented in this case. *See In re Sanders*, 377 B.R. 836 (Bankr. W.D. Tex. 2007); *In re Dale*, No. 07-32451-H5-13 (Bankr. S.D. Tex. Sept. 17, 2007). Faced with the

[5] The other requirements (relevant in the present case) for application of the Unnumbered Paragraph are: (1) the debt was incurred within 910 days preceding the filing of the debtor's case; and (2) the collateral for the debt consists of a motor vehicle acquired for the personal use of the debtor. *See In re Graupner*, 356 B.R. 907, 911 (Bankr. M.D. Ga. 2006). It is undisputed that the Claim of Wells Fargo meets these two tests.

question of the extent of coverage of a PMSI, these courts looked to state – Texas – law to determine whether negative equity can fall within the Unnumbered Paragraph.[6]

Under section 9.103 of the Texas Business and Commerce Code, each court concluded that coverage of a PMSI, and thus, the effect of the Unnumbered Paragraph, is limited by the definition in that section of "purchase-money obligation." The opinions then diverge, Judge Karen Brown, in *Dale*, holding that the Unnumbered Paragraph, while not applying to a negative equity obligation, did protect the portion of the debt underlying the claim that met the definition of purchase-money obligation. Judge Leif Clark, however, in *Sanders*, held that a claim that covered both a purchase-money obligation and other debt was wholly excluded by the taint of the latter from the ambit of the Unnumbered Paragraph.

This court concurs with the determination in each of the *Dale* and *Sanders* cases that a PMSI does not extend to negative equity. Not only is the court persuaded that

---

[6] Wells Fargo argues that the plain meaning of the Unnumbered Paragraph is that, if any of its debt is secured by a PMSI, the protection of the Unnumbered Paragraph extends to the entirety of the claim. The court disagrees. The Unnumbered Paragraph refers to "debt that is the subject of the claim" that is secured by the PMSI. As discussed below, the debt secured by the PMSI is limited by state law to the purchase-money obligation. Section 9.103(b) of the Tex. Bus. & Com. Code specifies that a "security interest in goods is a purchase-money security interest . . . to the extent that the goods are purchase-money collateral . . . ." Section 9.103(a)(1) defines purchase-money collateral as "goods . . . that secure[ ] a purchase-money obligation with respect to that collateral," suggesting that the collateral may secure debt as well that is not a purchase-money obligation and the debt that is not part of the purchase-money obligation is not secured by the PMSI. As discussed below, part of the debt that is the subject of the Claim does not meet the definition of "purchase-money obligation." Hence, to the extent the Claim includes debt that does not fit within the definition of "purchase-money obligation," Wells Fargo does not have "a purchase money security interest securing [that] debt" (though, as to non-purchase-money debt, it does have a security interest, though not a PMSI). The non-purchase money debt is subject to section 506 of the Code, and that portion of the Claim does not fall within the Unnumbered Paragraph. Had Congress wished to expand the coverage of PMSI beyond purchase-money debt, given that the Unnumbered Paragraph, as discussed below, creates an exception to a general rule that advances underlying goals of the Code, it would likely have said so more explicitly (just as, had Congress intended to adopt generally the transformation rule applicable in some states (*see* note 7, below), it would have said so clearly).

these cases properly analyzed the nature of a PMSI under state law; the court finds especially persuasive the point made in *Sanders* that, as the Unnumbered Paragraph represents an exception to the general rule established in Code §§ 506(a) and 1325(a)(5), it must be construed narrowly. *See Sanders*, 377 B.R. at 862; *In re Mitchell*, 379 B.R. 131, 136 (Bankr. M.D. Tenn. 2007) (holding that exceptions to general rules should be construed narrowly); *Scarborough v. Chase Manhattan Mortgage Corp.* (*In re Scarborough*), 461 F.3d 406, 411 (3d Cir. 2006) (same); *In re Townsend*, No. 07-20956, 2008 WL 920610, at *7 (Bankr. D. Kan. Apr. 3, 2008) (opining that the Unnumbered Paragraph should be narrowly construed to create a limited exception to the usual treatment of secured claims in chapter 13 plans).

The effect of the Unnumbered Paragraph is to require full satisfaction of a deficiency claim that, but for the Unnumbered Paragraph, would be unsecured. Thus, the Unnumbered Paragraph effects a preference for unsecured (deficiency) claims of vehicle financers. This is inconsistent not only with the general congressional goal that, in bankruptcy, creditors of equal status should receive comparable recoveries (*see, e.g.,* 5 Collier on Bankruptcy ¶ 547.02 (15th ed. rev. 2007) ("[a] prime bankruptcy policy [is] equality of distribution among creditors of the debtor."); *Cent. Va. Cmty. Coll. V. Katz*, 546 U.S. 356, 363-64 (2006) (noting that one of the critical features of every bankruptcy case is the equitable distribution of property among the debtor's creditors); *Howard Delivery Serv. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 667 (2006) (quoting *Kothe v. R.C. Taylor Trust*, 280 U.S. 224, 227 (1930) (opining that the broad purpose of bankruptcy is to bring about an equitable distribution of the bankrupt's estate among creditors)); *In re Baddin v. Olson* (*In re Olson*), 66 B.R. 687, 694 (Bankr. D. Minn. 1986) (stating that a

general goal of bankruptcy is equality in the treatment of similarly situated creditors); *Heard v. City Water Bd.* (*In re Heard*), 84 B.R. 454, 457 (Bankr. W.D. Tex. 1987) (stating that the substantive goals of the bankruptcy process are fair and equitable treatment of creditors as amongst themselves); *Vaughan v. Kerry Steel, Inc.* (*In re Ottawa River Steel Co.*), No. 02-3073, 2003 Bankr. LEXIS 1657 at *7 (Bankr. N.D. Ohio May 13, 2003) (noting that one of the primary goals of the Bankruptcy Code is to ensure the equal treatment of similarly situated creditors)). The effect of the Unnumbered Paragraph is also at odds with section 1322(b)(1), which generally bars discrimination among unsecured creditors through classification of their claims. By treating an undersecured claim as fully secured, the undersecured creditor's deficiency is classified separately from – and treated better than – general unsecured claims.

Because a debtor, in calculating the amount available for unsecured creditors under Code § 1325(b)(1), may deduct payments to a creditor with a lien on a vehicle (*see* Code § 707(b)(2)(A)(iii), applicable to above-median debtors in chapter 13 through Code § 1325(b)(3); *In re Owsley*, 384 B.R. 739, 742 (Bankr. N.D. Tex. 2008); *In re Long*, 372 B.R. 467, 471 (Bankr. W.D. Wis. 2007)), the increase of secured debt resulting from application of the Unnumbered Paragraph in favor of a deficiency will reduce what is available to pay other unsecured claims. In other words, the added recovery provided to a car financer by reason of the Unnumbered Paragraph will, in some cases, be at the expense not of the debtor but rather of general unsecured creditors.

Given this effect, the general rule of construction that exceptions should be narrowly read is especially apropos in construing the Unnumbered Paragraph. Limiting the protection of the Unnumbered Paragraph to purchase-money obligations not only is

consistent with the rules of statutory construction but also precisely addresses the congressional goal that a debtor not be able to use chapter 13 to strip-down recently incurred debt. The negative equity Wells Fargo here rolled into the debt against the Vehicle is not the sort of indebtedness Congress was aiming at when it enacted the Unnumbered Paragraph.

Before turning to which portions of the Claim are covered by the Unnumbered Paragraph, the court must address the conclusion reached by Judge Clark in *Sanders*. There Judge Clark, applying standard rules for statutory construction, held that a claim only part of which was secured by a purchase money security interest (i.e., only part of which represented funds advanced as a purchase-money obligation) was wholly outside the scope of the Unnumbered Paragraph. While Judge Clark's analysis is persuasive, logically defensible and, indeed, represents a *tour de force* of statutory construction, this court respectfully disagrees with the result he reaches.[7]

Judge Clark noted that application of the Unnumbered Paragraph to a claim is triggered, through use of the word "if," by a "purchase money security interest securing the debt that is the subject of the claim." Judge Clark reasoned that, had Congress intended to cover claims partly secured by a PMSI and partly not so secured, it would have used a term such as "to the extent that" as opposed to the yes/no test suggested by

---

7 In some states, the same result as that reached by Judge Clark would obtain through application of the transformation rule, by which debt to be secured by a PMSI must be entirely a purchase-money obligation. *See, e.g., In re Price*, 363 B.R. 734, 746 (Bankr. E.D.N.C. 2007); *In re Hunt*, No. 07-20627, 2007 Bankr. LEXIS 2709, at *6 (Bankr. D. Kan. Aug. 14, 2007); *In re Peaslee*, 358 B.R. 545, 560 (Bankr. W.D.N.Y. 2006); *In re Westfall*, 365 B.R. 755, 763 (Bankr. N.D. Ohio 2007). That rule, however, has not been adopted by Texas courts. *See*, *e.g.*, *In re Palmer*, 123 B.R. 218, 221 (Bankr. N.D. Tex. 1994); *Borg-Warner Acceptance Corp. v. Tascosa Nat'l Bank*, 784 S.W.2d 129, 135 (Tex. App.—Amarillo 1990, writ denied) (seeing no need to juxtapose the transformation rule on the clear meaning of the Texas legislature's mandate—giving favored treatment to PMSI status). Rather than looking to state law, however, Judge Clark relies instead on construction of the Code itself in reaching his conclusion.

the word "if." *Sanders*, 377 B.R. at 859. He therefore concluded that Congress intended that the Unnumbered Paragraph only apply to a claim for a debt wholly covered by a PMSI.

Judge Clark found support for his reasoning in judicial constructs of Code § 1322(b)(2), which allows a plan to modify the rights of a secured creditor other than one having "a claim secured *only* by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2) (emphasis added). Courts construing this provision have held that it does not apply to a claim secured partly by the debtor's principal residence and partly by other collateral. *See, e.g., Scarborough*, 461 F.3d at 414; *In re Cox*, No. 07-60073, 2007 WL 1888186, at *2 (Bankr. S.D. Tex. June 29, 2007); *In re Oliveira*, 378 B.R. 789, 791 (Bankr. E.D. Tex. 2007). Judge Clark opined that constructions so limiting the exception provided in section 1322(b)(2) support a parallel, either/or construction of the Unnumbered Paragraph. *Sanders*, 377 B.R. at 861.

Addressing the latter point first, there are a number of reasons this court does not find reference to section 1322(b)(2) helpful in understanding the Unnumbered Paragraph. First, the word "only" is more clearly restrictive than the word "if."[8] *See Scarborough*, 461 F.3d at 410-11 (limiting the meaning of "only" to the equivalency of the verb "is" and holding that a claim secured by real property that is, in part, not the debtor's principal residence does not fall under the terms of the exception in section 1322(b)(2)); *In re Adebanjo*, 165 B.R. 98, 104 (Bankr. D. Conn. 1994) (excluding "includes" or "contains" from the purview of "only").

---

8 Compare definition of "if" ("in the event that") with that of "only" ("as just the one simple thing and nothing more or different"). Webster's Third New International Dictionary 1125 and 1577 (1976).

Second, section 1322(b)(2) relates to cramdown generally under section 1325(a)(5) of the Code, while the Unnumbered Paragraph does not limit cramdown but rather only prevents lien stripping pursuant to section 506(a)(1). The Unnumbered Paragraph does not prevent a debtor from "modify[ing] the rights" of the holder of a claim covered by that provision. *See* 11 U.S.C. § 1322(b)(2). Thus, a creditor entitled to the benefit of the Unnumbered Paragraph may still have its rights modified, provided that its claim may not be bifurcated under section 506(a)(1).[9] A creditor with a lien on the debtor's principal residence, however, may not be affected by a chapter 13 plan at all: its claim is not subject to bifurcation nor may its other rights under its loan documents be modified through a plan.[10] This absolute prohibition on a debtor's ability to use the

[9] One possible reading of the Unnumbered Paragraph is that, for purposes of section 1325(a)(5), a covered claim is not an "allowed secured claim," since the Unnumbered Paragraph entirely eliminates consideration of section 506 in applying section 1325(a)(5). Because the Unnumbered Paragraph does not address section 1322(b)(2) at all, it can be argued that the provision does not limit a debtor's ability in a plan to "modify the rights of [a] holder[ ] of [a] secured claim [ ]" that comes within the ambit of the Unnumbered Paragraph. *See* 8 Collier on Bankruptcy ¶ 1325.06[1][a] (15th ed. rev. 2007). The effect of such a construction would be to permit a debtor to impair a claim falling within the Unnumbered Paragraph without affording the holder of the claim the protections provided by section 1325(a)(5). While the court appreciates that Congress should be taken at its word, application of the usual plain meaning rule is not appropriate if the result would be absurd. *See Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)); *In re Lorenz*, 368 B.R. 476, 482-83 (Bankr. E.D. Va. 2007) (citing *In re Phillips*, 362 B.R. 294, 295 (Bankr. E.D. Va. 2007)). As discussed above, Congress intended in the Unnumbered Paragraph to benefit, not disadvantage, creditors like Wells Fargo – and it clearly would be disadvantageous to such creditors and would frustrate the congressional purpose to construe the Unnumbered Paragraph to allow a debtor the freedom to impair a covered secured claim under section 1322(b)(2) without limiting that impairment as provided in section 1325(a)(5). Construing the Unnumbered Paragraph to eliminate effects of Code § 506 beyond lien stripping, even if consistent with its plain meaning, would thus lead to an absurd result. Furthermore, such a construction overlooks the words "a claim described in that paragraph [section 1325(a)(5)]." If a claim covered by the Unnumbered Paragraph is not considered an "allowed secured claim," it is not "described in" section 1325(a)(5) – which would mean *no* claim is covered by the Unnumbered Paragraph.

[10] This is not to say that a chapter 13 case has no effect on such a creditor; the stay of Code § 362(a) applies, and chapter 13 permits cure of arrearages in a plan. 11 U.S.C. § 1322(b)(5); *see also* 8 Collier on Bankruptcy ¶ 1322.06[1][a] (15th ed. rev. 2007).

cramdown tool logically is more strictly limited than the lesser effect of the Unnumbered Paragraph.

Third, it would be difficult, if not impossible, to modify the rights of a creditor holding a security interest in a debtor's principal residence and other collateral such that the creditor's rights vis-à-vis the latter are changed but those pertaining to the principal residence are not affected. On the other hand, distinguishing for purposes of section 1325(a)(5)(B) between the part of a claim covered by a PMSI and the part that is not presents no such difficulty.[11]

As to Judge Clark's point that Congress would have expressed itself differently – for example, by using language such as "to the extent that" – if it had intended the Unnumbered Paragraph to apply to a claim only partially secured by a PMSI, the use of such language would cloud the meaning Congress intended. Any use of such limiting language would risk a construction of the provision that would allow the very lien stripping Congress meant to prevent.[12] Furthermore, the "if" in the Unnumbered Paragraph applies to each of the three conditions to the provision's applicability – the Unnumbered Paragraph only applies to a claim "if . . . the debt was incurred within the

---

[11] The court knows of no requirement that a creditor file just one claim to reflect two types of debt. Indeed, Congress, in providing that an undersecured creditor (in most cases) has both an unsecured claim and a secured claim (Code § 506(a)(1)) recognizes that a single debt may support two different claims. If a creditor having a debt that is partly a purchase-money obligation and partly not a purchase-money obligation were to file a claim for each type of indebtedness, under Judge Clark's reasoning, the claim evidencing the purchase-money obligation apparently would satisfy the PMSI requirement for application of the Unnumbered Paragraph.

[12] If the Unnumbered Paragraph provided, "to the extent that the creditor has a purchase money security interest securing the debt that is the subject of the claim," a possible construction would limit the creditor's protection to collateral value. Other of Judge Clark's suggested formulations that would, in his view, have indicated Congress meant the Unnumbered Paragraph to apply to a debt that is not wholly a purchase-money obligation would not necessarily result in the same ambiguity. Determining the meaning of the Unnumbered Paragraph on the basis of alternative ways the Unnumbered Paragraph might have been worded, however, especially given Congress's apparent intent, in this court's view, strains the boundaries of statutory construction.

910 day" period preceding filing "and [if] the collateral for [the] debt consists of a motor vehicle . . . ." Congress could not have used "to the extent that" to introduce the tests other than the PMSI qualifier. Structurally, use of the word "if" ensures equal necessity of each of the conditions to application of the Unnumbered Paragraph.

Finally, Judge Clark's construction of the Unnumbered Paragraph is inconsistent with congressional intent and could lead to problematic outcomes. Given that the Unnumbered Paragraph was intended to protect against a debtor who purchases a vehicle in contemplation of stripping down the auto financer's claim in chapter 13, it makes no sense to read the provision so strictly that any mix of non-purchase money debt would taint the whole and cost the lender the protection Congress intended.[13] Such a construction is particularly inappropriate because, as a practical matter, whether a particular charge may be covered by a PMSI is not certain. As discussed below, Tex. Bus. & Com. Code § 9.103 contemplates that a PMSI may cover more than just the purchase price of the collateral. *See* Tex. Bus. & Com. Code § 9.103(a)(2) (a purchase-money obligation "means an obligation . . . incurred as all or part of the price of the collateral *or for value given to enable the debtor to acquire rights in or the use of the collateral* . . . .") (emphasis added). Comment 3 to section 9.103 explains what, other than collateral value, may be covered by a PMSI. As the description of the charges beyond the price of the collateral that are covered is open ended (the Comment notes that

13 It might not be unreasonable, given the frequency (according to Wells Fargo) with which negative equity is included in debts such as that underlying the Claim, for Congress to elect for reasons of policy to encourage or discourage such a practice by tailoring accordingly a provision of the Code. However, while there is no indication that Congress intended to *encourage* negative equity trade-ins, neither is there any suggestion in the Code or legislative history that Congress intended to *discourage* such loans by penalizing their makers in the Unnumbered Paragraph. Certainly, absent clearer direction from Congress, the court is reluctant to construe the Unnumbered Paragraph as penalizing such loans.

a purchase-money obligation extends to certain specified types of charges ". . . and other similar charges"), Judge Clark's holding that a taint results from any mix of debt not includible in a purchase-money obligation leaves a lender with a difficult choice. A lender, under *Sanders*, must decide whether to finance and secure a charge which may be appropriate to the specific transaction, but which may be found by a court not to be part of the debt covered by the PMSI and so to taint the debt and the lender's claim such that the lender will lose the protection of the Unnumbered Paragraph.[14]

This brings the court to the next question: what charges, other than the purchase price of the Vehicle (clearly protected by the Unnumbered Paragraph) and the negative equity (clearly outside the scope of the Unnumbered Paragraph) are part of the purchase money obligation and, hence, exempt from strip-down under section 506(a)(1) of the Code. Comment 3 to section 9.103 states that a purchase-money obligation includes:

> [O]bligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.

In the case at bar, it is clear that the charge for sales tax falls within this description. Though not so specifically described in Comment 3, the court concludes that, facially, license and registration fees, dealer's inventory tax and the documentary fee are "similar obligations." Each appears to be an expense Debtor had to incur and pay to acquire the Vehicle.[15]

---

14 In the case at bar, the court concludes below that the charge for insurance that was financed by Wells Fargo was not covered by the PMSI. The court questions whether a construction of the Unnumbered Paragraph that would cause the loss of its protection if a lender funded the purchase of insurance would make sense from a policy perspective.

15 Wells Fargo argues Debtor would not have been able to acquire the Vehicle without trading in his other vehicles. The court concludes this is too broad a reading of section 9.103. While the court

As to the charge for the extended warranty, this court has previously held that an extended warranty is part and parcel of the vehicle to which it pertains. *See Citifinancial Auto, Ltd. v. Flores* (*In re Flores*), 363 B.R. 799, 801 (Bankr. N.D. Tex. 2007). Because the extended warranty is an attribute of the Vehicle, it, too, must be treated as part of the purchase-money obligation.

On the record before the court, however, the charge for insurance cannot be regarded as falling within the definition of "purchase-money obligation." Insurance is not necessarily wedded to a particular vehicle; a vehicle may be bought – a debtor is able to acquire an interest in a vehicle – without simultaneously, and from the same source, purchasing insurance. While it may be that, on a different record, the court would come to a different conclusion, in this case, Debtor's purchase-money obligation has not been shown to include the insurance charge, and the portion of the Claim attributable to insurance, like the negative equity portion, does not fall within the ambit of the Unnumbered Paragraph.

Thus, of the $35,368.93 originally financed by Wells Fargo, $22,874.01 constituted a purchase-money obligation. The final question the court must address, then, is how to apply the prepetition reduction of the debt to Wells Fargo ($680.25, which represents the amount originally financed, $35,368.93, less the amount of the Claim, $34,688.68). Because, in the case at bar, there is no contractual provision as to how payments are to be applied, the court has some discretion as to how to apply payments to

is not prepared to hold that trade in of a vehicle and financing of resulting negative equity would never "enable the debtor to acquire rights in or the use of" a new vehicle, "enable" means "[t]o give power to do something; to make able." Black's Law Dictionary 546 (7th ed. 1999). Thus, the test for a charge being part of a "purchase-money obligation" is whether the collateral could have been acquired or used only if that charge was incurred. Given the "close nexus" required between the charge and the collateral (*see* Comment 3 to § 9.103 Tex. Bus. & Comm. Code), the court certainly cannot find that Debtor could not have acquired the Vehicle without incurring the negative equity obligation.

determine how much of the Claim is covered by the Unnumbered Paragraph. *See In re Long*, 519 F.3d 288, 297-98 (6th Cir. 2008). A number of courts have prorated payments in this situation. *See In re White*, 352 B.R. 633, 648 (Bankr. E.D. La. 2006); *Dale*, slip op. at 11. Adopting that methodology, 64.7% of the Claim, or $22,443.58, represents a purchase-money obligation and is subject to the Unnumbered Paragraph.

**III Conclusion**

For the foregoing reasons, the court concludes that the Claim must be treated under Code § 1325(a)(5)(B) as secured to the extent of $22,443.58.[16] As the Plan provides treatment as required by Code § 1325(a)(5) and the Unnumbered Paragraph only to the extent of $20,800, it can not be confirmed unless it is amended. Debtor will have ten days from entry of this memorandum opinion in which to amend the Plan. If the Plan is amended to conform to this memorandum opinion, the chapter 13 trustee may submit a confirmation order in the ordinary course. If it is not so amended, the Objection will be sustained and confirmation of the Plan denied.

It is so ORDERED.

# # # # END OF MEMORANDUM OPINION # # # #

[16] Given the record in the case at bar, the court need not here address the question of whether, had Wells Fargo's collateral appreciated in value such that it was worth more than the purchase-money obligation portion of the Claim, Wells Fargo would have a secured claim to the extent of the collateral's value as opposed to just the purchase-money obligation portion of the Claim.